**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **CRIMINAL NO. PWG-12-0075-2** |
| | * | |
| **ALEXSI LOPEZ,** | * | |
| | * | |
| Defendant. | ****** | |

**MEMORANDUM OPINION AND ORDER**

Defendant seeks a judgment of acquittal, or in the alternative, a new trial, pursuant to Federal Rules of Criminal Procedure 29(c) and 33, respectively, following convictions under the Hobbs Act.  With respect to the Rule 29(c) motion, Defendant argues that there was contradictory evidence as to whether a robbery was consummated and insufficient evidence that a robbery took place.  With respect to the Rule 33 motion, Defendant argues, *inter alia*, prejudicial error resulted from the Government including arguments during closing that were not supported by the evidence, the failure to notify Defendant in advance of a stain on a piece of physical evidence, and evidence calling into question certain key pieces of Government evidence.  The Government has responded, arguing that there was sufficient evidence of a consummated robbery, that its closing argument was supported by evidence and was insufficiently prejudicial to require a new trial, that Defendant had adequate opportunity to examine the stained evidence prior to trial, and that the evidentiary issues raised by Defendant rely on an incorrect characterization of the evidence at trial.   I agree with the Government, and deny the motions.

## I.  BACKGROUND

On September 4, 2014, Defendant Alexsi Lopez was convicted of one count of conspiracy to interfere with interstate commerce by robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and one count of interference with interstate commerce by robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a), following an eight-day jury trial.  Jury Verdict, ECF No. 110; Third Superseding Indictment, ECF No. 36.

At trial, a cooperating witness identified Lopez as a "paisa," or friend, of the MS-13 gang, and testified that Lopez associated closely with co-defendant Ramon Miguel Cerros-Cruz, who was a "jumped-in" (i.e. full-fledged) member of MS-13 and who had entered a guilty plea prior to trial.  The witness stated that, in 2006, he observed Lopez carrying a large knife with brass knuckles that he kept in a black sheath.  Additionally, the witness testified that, while he was incarcerated at Prince George's County Detention Center in 2007, he overheard Lopez tell another inmate that Lopez had robbed a brothel and stabbed a man along with Cerros-Cruz.  Records presented by the Government at trial showed that the witness and Lopez were incarcerated in the same housing unit at Prince George's County Detention Center from August 11, 2007 to October 2, 2007.

During the trial, the Government also presented extensive evidence that, on February 28, 2007, two Hispanic males entered an apartment operating as a brothel in Hyattsville, Maryland, brandishing knives and demanding money from the doorman and a prostitute who was working there.  The two males tied up the doorman using cords cut from electric fans, and one of the males proceeded to rape the prostitute on a mattress in the bedroom while the other searched the apartment for money.  The evidence showed that the rapist carried a knife in a black sheath and that he placed the sheath on a table near the mattress.  During the robbery, another man

2

(apparently, a customer) entered the apartment and was stabbed to death by one or both of the robbers using their knives, after which they stole the prostitute's cell phone and the stabbing victim's wallet and watch before fleeing the apartment.

Evidence collected from the crime scene included the cut fan cords, from which DNA was recovered that was identified as belonging to Cerros-Cruz, and the black knife sheath, from which DNA was recovered that matched Lopez.

Following his conviction, Lopez timely filed a Motion for New Trial and for Judgement of Acquittal (Def's Mot.), ECF No. 115, on May 7, 2015.  The Government filed its Opposition to Defendant's Motion for New Trial ("Gov't Opp'n"), ECF No. 118, on June 8, 2015 and the time for a reply since has passed without a submission from Lopez's counsel, *see* Loc. R. 105.2(a), 207.  The motion now is ripe and is before me.  Having reviewed the filings, I find that a hearing is not necessary.  Loc. R. 105.6, 207.

## II.  LEGAL STANDARDS

### a.  Motion for Judgment of Acquittal

Fed. R. Crim. P. 29 permits a defendant to move for judgment of acquittal after the close of all evidence, or within 14 days after a guilty verdict regardless of whether the same motion was made prior to submission to the jury.  Fed. R. Crim. P. 29(a) and (c).  Following a motion, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  In its review, the court must "'[v]iew[] the evidence in the light most favorable to the Government,'" *United States v. Hickman*, 626 F.3d 756, 763 (4th Cir. 2010) (quoting *United States v. Bynum*, 604 F.3d 161, 166 (4th Cir. 2010)), and uphold a conviction if it is supported by "'evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a

reasonable doubt.'"  *United States v. Young*, 609 F.3d 348, 355 (4th Cir. 2010) (quoting *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)).

### b. Motion for New Trial

Pursuant to Fed. R. Crim. P. 33, a court may grant a new trial on motion by a defendant "if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Unless grounded on newly discovered evidence, a motion for a new trial "must be filed within 14 days after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(2).  The decision to order a new trial is within the sound discretion of the trial court, *see United States v. Smith*, 451 F.3d 209, 216–17 (4th Cir. 2006), but "a trial court 'should exercise its discretion to award a new trial sparingly,' and a jury verdict is not to be overturned except in the rare circumstance when the evidence 'weighs heavily' against it."  *Id.* (quoting *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003)); *see also United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997).

## III. DISCUSSION

The Government correctly notes that Lopez has not clearly indicated which of his arguments seeks an entry of a judgement of acquittal and which seeks a new trial.  Gov't Opp'n 4.  However, because only his argument regarding the sufficiency of the evidence appears to raise a potential ground for entry of judgment of acquittal, I will treat that portion of the motion as relating to Lopez's Fed. R. Crim. P. 29(a) motion and his remaining arguments as sounding in a Fed. R. Crim. P. 33 motion for new trial.

### a. Motion for Judgment of Acquittal

Lopez moves for a judgment of acquittal on the basis that there was insufficient evidence that a Hobbs Act robbery took place and that, even if it did occur, the robbery did not interfere with interstate commerce.  I disagree.

The Hobbs Act states:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C § 1951(a).  To sustain a conviction for Hobbs Act robbery the government must prove that the defendant participated, or conspired to commit (1) a crime of robbery or extortion (2) that interferes with interstate commerce.  *See, e.g.*, *Stirone v. United States*, 361 U.S. 212, 218 (1960); *United States v. Williams*, 342 F.3d 353 (4th Cir. 2003).  Lopez argues that the Government did not present sufficient evidence relating to either element.

In support of this claim, Lopez argues that no robbery occurred because the testimony that the prostitute's cellphone was stolen was contradicted.  First, a completed robbery is not necessary for the conspiracy count.  Instead, it is sufficient that Lopez intended to complete a robbery which would have affected commerce, even though his intention was frustrated.  *See United States v. Salahuddin*, 765 F.3d 329, 341 (3d Cir. 2014) ("The goal of the conspiracy . . . need not be achieved for a conspiracy conviction.").  Second, resolving conflicting or apparently conflicting testimony is the responsibility of the jury, and the mere fact that jurors could have doubted the testimony that the cell phone was stolen does not mean that they were required to.  Further, there was unchallenged testimony that the stabbing victim's watch and wallet were taken, and Lopez has not contested that there was sufficient evidence to find that they were taken by Lopez and/or Cerros-Cruz.

Insofar as Lopez argues that the robbery did not interfere with commerce, similar claims have been raised at various times before the Fourth Circuit and found to be without merit. *See e.g.*, *United States v. Taylor*, 754 F.3d 217 (4th Cir. 2014); *Williams*, 342 F.3d at 350.  Under the

5

Hobbs Act, the word "commerce" takes on a broad meaning and is not limited to only "legal" commerce. *Taylor*, 754 F.3d at 223. For example, in *United States v. Taylor*, robbing drug dealers fell within the Hobbs Act because drug dealing was found to be an inherently economic enterprise that affects interstate commerce. *Id.* at 224. A brothel is no different. It is a commercial establishment that deals in the business of prostitution and here there was uncontested testimony that the prostitute working there had traveled interstate from New York City to Langley Park, Maryland, for the purpose of working in the brothel. There also was testimony that the brothel made regular use, as a part of its business, of condoms manufactured outside the State of Maryland and that therefore had moved in interstate commerce. The actions of the two assailants also conformed to the cooperating witness's claim that MS-13 routinely targeted brothels in Langley Park, Maryland, for extortion and robbery. When viewed in the light most favorable to the Government, the evidence presented at trial is sufficient to sustain the jury's verdict and the Motion for Judgment of Acquittal must be denied.

### b. Motion for New Trial

In support of his motion for a new trial, Mr. Lopez does not assert any newly discovered evidence. *United States v. Chavis*, 880 F.2d 788, 793 (4th Cir. 1989) (noting that the Fourth Circuit uses a five-part test for determining whether a new trial should be granted). Instead, Mr. Lopez's argument for a new trial relies on assertions of errors at trial. Specifically, Lopez argues that a certain number of the Government's arguments during summation were improper and give rise to several evidentiary issues.

### 1. The Government's Closing Argument

First, Lopez seeks a new trial based on a mistaken belief that the Government's arguments during closing were so improper as to deprive him of a fair trial. To succeed on such

a claim, ("(1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Mitchell*, 1 F.3d 235, 240 (4th Cir. 1993). Further, Lopez bears the burden of proving that the Government's closing statements were not based on, or inferred from, facts in evidence and that these statements prevented him from receiving a fair trial. *Id.*; *see also United States v. Wilson*, 135 F.3d 291, 298 (4th Cir. 1998).

First, Lopez argues that the Government should have been barred from arguing that Lopez had raped the prostitute during the robbery because of his assumption that the government would be arguing that Cerros-Cruz had been the rapist, relying on *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003).  This is incorrect.  In *Higgs*, the Fourth Circuit held that the Due Process Clause sometimes prohibits the Government from presenting two mutually inconsistent theories of the same case against different defendants. *Id.* at 326.  But here, there were no conflicting claims by the Government regarding who was the sexual attacker;  Cerros-Cruz pleaded guilty to Hobbs Act conspiracy but at no point during the proceedings against Cerros-Cruz or Lopez did the government commit itself to the position that Cerros-Cruz was the rapist. Throughout trial, the Government presented a clear and consistent case against Lopez that attempted simply to prove that he had participated in the robbery without foreclosing the possibility that he had, himself, raped the prostitute, stabbed the third victim, or engaged in any other specific act.

At trial, the Government acknowledged that the prostitute tentatively identified Cerros-Cruz as her attacker from an eighteen-person photo array approximately five years after the rape occurred.  However, there also was considerable evidence that the prostitute was not able to accurately identify her attacker: in several photo arrays she identified several different

individuals, and she was raped at knife point while a pillow was held over her face that obstructed her view, during an incredibly traumatic event that also included a stabbing death in the next room. Furthermore, Lopez's DNA was discovered on a knife sheath recovered next to the bed where the prostitute was raped, which matched her narrative that her rapist withdrew a large knife from the knife sheath found next to the bed. These facts, amongst other evidence, allowed the Government to argue during closing that Lopez was the rapist.

With respect to Lopez's argument that the defense should have been permitted to present to the jury evidence regarding Cerros-Cruz's guilty plea, I similarly find no grounds to revisit my earlier ruling. At no point during the trial was any evidence regarding Cerros-Cruz's guilty plea introduced, so it was improper for Lopez to bring it up for the first time during closing argument. Therefore the Government's objection properly was sustained at trial and there is no reason to order a new trial.

### 2. Objections to the Government's Rebuttal

Lopez also argues that by providing an explanation during rebuttal as to why the Government did not interview the cellmate of the cooperating witness, Lopez's substantial rights were prejudiced to the point of denying him a fair trial. In support of his claim, Lopez cites *United States v. Lighty* for the premise that, during closing, the Government cannot comment on facts not in evidence. 616 F.3d 321, 361-62 (4th Cir. 2010). Though this is true, there was sufficient evidence introduced at trial from which a sensible inference could be drawn that safety concerns precluded any opportunity to interview Argueta, the cellmate. Evidence introduced at trial clearly established that Argueta had a close relationship with MS-13, that the violent nature of the gang sometimes was directed towards those who cooperated with law enforcement, and that the gang was prevalent in the Maryland Department of Corrections. Consequently, the

Government relied upon a reasonable inference that the safety of the cooperating witness would have been affected by any attempts to interview Argueta.

Even if Lopez were correct that the argument was improper, it is not so prejudicial as to warrant a new trial. As noted by the Fourth Circuit in *Lighty*, to determine whether the Government's comments during closing were prejudicial to the point of denying a defendant a fair trial, I must consider

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters . . . (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel[;] and (6) whether curative instructions were given to the jury.

*Lighty*, 616 F.3d at 361 (internal citations omitted). In light of these factors, it is apparent that Lopez was not so severely prejudiced as to warrant a new trial.

First, the Government's comments were unlikely to mislead the jury and prejudice the accused because the jury members could reasonably have inferred the same conclusion from facts and evidence introduced during trial. Second, the Government's statements were isolated and comprised only a brief explanation as to the danger that the cooperating witness would have been subjected to had Argueta been interviewed. Third, the Government's remarks played little role in strengthening the competent proof introduced to establish the guilt of the accused because they did not serve to bolster the evidence actually presented. Fourth, the comments were not deliberately placed before the jury to divert attention to extraneous matters, but were instead an acceptable response to issues raised during Lopez's closing. Finally, although no curative instructions were given to the jury, they were not necessary. As noted previously, the Government's statements during rebuttal were invited by questions raised during defense

9

closing.  As such, the Government's argument during rebuttal was properly based on evidence introduced during trial and not so prejudicial so as to warrant a new trial.

### 3.  The Knife Sheath

Defendant claims that the knife sheath found at the crime scene could not have held the knife described by the prostitute.  In support of this claim, the defendant states that the knife described by the prostitute had little holes in the blade and handle, whereas that the knife that Argueta said that Lopez carried prior to his arrest in April 2007 had brass knuckles on the handle.  Def.'s Mot. 4.  The Government provided a photograph at trial of a knife with brass knuckles on the handle.  According to Lopez, the knife described by Argueta could not have fit into the sheath found at the scene.  *Id.*

These claims are without merit.  First, questions over whether the knife owned by Lopez could have fit into the knife sheath recovered from the scene should have been raised at trial and explored during cross-examination; they were not.  Further, these claims rely on nothing more than speculation: the knife Lopez was alleged to have used during the robbery was never recovered, nor was there any evidence introduced as to whether it would have fit the knife sheath recovered from the crime scene.  Having failed to raise these arguments at trial, Lopez cannot raise them now.

### 4.  DNA Evidence

Lopez also seeks a new trial on the grounds that he was not timely notified that the evidence bag containing the knife sheath was stained, in violation of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963).  *See* Def.'s Mot. 5.  To show a *Brady* violation, Lopez must "'show that the undisclosed evidence was (1) favorable to the defendant[]; (2) material; and (3) that the prosecution had the materials and failed to disclose them.'"  *United States v. Stokes*, 261

F.3d 496, 502 (4th Cir. 2001) (quoting *United States v. Sarihifard*, 155 F.3d 301, 309 (4th Cir. 1998)).  Assuming that the existence of the stain was favorable to Lopez—presumably by casting doubt on the results of DNA testing—Lopez has not shown that the stain was material or that the prosecution failed to disclose it.

First, the Government maintains that it provided a serology worksheet "that noted the dried 'grease-like' staining on the brown paper bag that contained the knife sheath . . . and a copy of a picture of the stained bag" during discovery and provided the bag itself over two weeks before trial.  Gov't Opp'n 10–11.  Lopez does not dispute that he received the material prior to trial, but appears to fall back on the claim that "the Government could not satisfy its obligation merely by producing one piece of paper with a notation contained within hundreds of pages of discovery."  Def.'s Mot. 5.  First, this appears to disregard that Lopez's counsel inspected the bag itself prior to trial.  Regardless, Lopez does not provide any case law to support his argument, and even if he had, his position is undercut by the clear importance of the serology report: from the beginning of this case, it was abundantly clear that the DNA recovered from the knife sheath was one of the key pieces of evidence linking Lopez to the crime scene.  Once the government turned over all of the information about that evidence, it was the obligation of defense counsel to review it, not the obligation of the Government to draw attention to its weaknesses.  *Cf. Lugo v. Munoz*, 682 F.2d 7, 9 (1st Cir. 1982) (no *Brady* obligation "when the facts were readily available to a diligent defender").

This also differs from the typical *Brady* case because the existence of the stain *was* known to Lopez and was inquired into at trial.  In fact, Lopez not only had the opportunity to cross examine several Government witnesses about the nature and likely effect of the stain, but he also was given the chance to question witnesses outside of the hearing of the jury in order to

explore the issue without risk of prejudice.  I also held the record open on that issue until Lopez's counsel advised that she was satisfied that she had fully explored it.  In light of the full opportunity given to Lopez to examine witnesses about the stain, I cannot find that he did not receive notice until it was too late to avoid prejudice.

It also has not been shown that any failure to disclose was material, which requires Lopez to show that "'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)).  First, during the extensive opportunity he had to explore the issue at trial, Lopez did not uncover any indication that the stain compromised the integrity of the evidence.  Second, the Government's DNA expert, Jessica Charak, offered an opinion pursuant to Fed. R. Civ. P. 702 that the stain would not have compromised the DNA sample unless the stain contained organic material and, in any event, could not have produced a false match with Lopez unless the stain contained Lopez's DNA; Lopez has not provided any evidence to dispute her conclusion.  Therefore, it is plain that earlier notice would not have changed the result at trial or allowed Lopez to cast additional doubt on the legitimacy of the DNA evidence recovered from the sheath.

Lopez's argument that Charak's testimony should be struck is similarly meritless.  According to Lopez, Charak's opinions were invalid because she was factually incorrect about whether the stain had actually seeped through the inner bag containing the sheath.  Def.'s Mot. 5.  First, this mischaracterizes Charak's testimony, which included the opinion that the stain, even if it made contact with the knife, likely would not have compromised the sample.  According to Charak, then, it was not material whether the stain had seeped through the bag.  Moreover, the jury was made aware that the stain had seeped through to the inner bag and Lopez had ample

opportunity to rely on that fact to cast doubt on Charak's opinions.  Even were I to agree with Lopez that Charak's opinions relied on incorrect or disputed facts, resolving any discrepancy is the province of the jury and does not warrant a new trial in any event.  *See United States v. Pritt*, 238 F.3d 417, 2000 WL 1699833, at *5 (4th Cir. Nov. 14, 2000) ("the district court's rejection of all or part of the testimony of a witness does not automatically entitle a defendant to a new trial") (citing *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)).

### 5.  Cooperating Witness's Testimony

Finally, Lopez seeks a new trial based on supposed inconsistencies in the cooperating witness's testimony.  The witness testified that he never was housed with Cerros-Cruz at the Prince Georges County Detention Facility, whereas Lopez believes that the records introduced at trial show that the two were housed together at that facility in 2007 or 2008.  Even if true, Lopez presents no argument that the cooperating witness perjured himself, nor does the he claim that the Government concealed evidence.  In fact, this argument appears to arise out of jail records that were introduced by the Government at trial.  Lopez had ample opportunity to cross examine the cooperating witness regarding this apparent discrepancy, and to determine whether it resulted from a failure of memory, a lack of knowledge by the witness, a misunderstanding of counsel, or a deliberate fabrication.  He did not.  It now is too late to seek a new trial based on arguments that Lopez could have but did not raise before the jury.[1]  Accordingly, I must deny Defendant's claim that a new trial is warranted due to the testimony of the cooperating witness.

---

[1] I also note that Lopez has not provided any details about what the supposed discrepancy was, much less provided the exhibit that supposedly undermines the entirety of the cooperating witness's testimony.  Thus even were this argument not waived by failing to raise it at trial, it would be impossible for me to judge its merit here.

**IV.     CONCLUSION**

For the reasons stated above, Defendant's Motion for a New Trial, ECF No. 115, is

DENIED.

It is so ordered.


Dated: <u>July    , 2015</u>                                                 <u>                    /s/                    </u>
                                                                                              Paul W. Grimm
                                                                                              United States District Judge